Case 80.—ACTION BY GEORGE W. RICE AND OTHERS AGAINST WILLIAM MOUNTZ AND OTHERS, TO REQUIRE THEM AS JUDGES OF THE CITY ELECTION TO ISSUE CERTIFICATES OF ELECTION TO THE PLAINTIFFS.—Oct. 17.

### Rice, &c. v. Mountz.

Appeal from Powell Circuit Court.

J. M. BENTON, Circuit Judge.

From the judgment Plaintiffs appeal.    Affirmed.

1. Elections—Municipal Elections—Manner of Holding Election—Statutes—Ky. St. 1903, Sec. 1596a, subsec. 5, provides that the county board of election commissioners shall constitute a board for examining and canvassing the returns of elections, requires the board to give certificates of the number of votes cast in the city or town and to deliver a copy thereof to the municipality. Section 3658, in relation to towns of the fifth class, provides that the elections shall be held as provided in the general laws of the State. Held, that a city election in a city of the fifth class must be held under the general election laws and by the same officers, and at the same time and place for holding the general election for State and county officers, and such an election held at a place other than where the general election was held, and under the supervision of officers appointed by the mayor of the city, was invalid.

Rice, &c. v. Mountz.

2.  Same—Ballots—Ky. St. 1903, Sec. 3658, provides that all
    municipal elections in cities of the fifth class shall be held
    under, and as provided in, the general election laws.   No
    registration of voters is required in cities of the fifth class,
    and section 3659 provides that in cities and towns where regis-
    tration is not required the ballots shall be deposited in a sep-
    arate box. Section 1453 prescribes the duty of the county clerk
    as to the printing of ballots, without stating whether there
    shall be separate ballots for candidates for municipal offices
    from that for candidates for county offices.  Held that, if a
    voting precinct only includes the territory of the municipality,
    the ballot may contain the names of candidates for county
    and municipal offices; but, if the precinct includes persons
    outside of the municipal territory, there must be separate
    ballots.

JOHN D. ATKINSON for appellants.

1. There is no contention in this case "that there was not a
fair and free expression of the popular will." When this is true,
"a mere irregularity in conducting an election will not invalidate
it." (City of Cynthiana v. Board of Education &c., 21 Ky. Law
Rep., 731.)

2. There is no complaint that all the electors of the town were
not aware of the place where the election was being held, or that
they did not all participate therein.  (21 Ky. L. R., 731; 80 Ky.,
159; 104 Ky., 699.)

C. F. SPENCER for appellees.

Our contention is that the mayor having no authority to appoint
election officers to conduct the election, at which appellants claim
to have been elected, the appointees had no power to conduct the
election, and the election so held was void.

Am. & Eng. Ency. of Law, vol. 10 p. 69, 671; Moore v. Sharp,
98 Tenn. 491; State v. Connor, 5 Ohio App. 346; Phillips v. Corbin,
8 Col. App. 346; Sharp v. Tilman, 2 Bart El. Cas. 907; Ky.
Election Law, Sec. 70, Acts 1901.

OPINION BY JUDGE NUNN—Affirming.

It appears that, on the 17th day of November, 1905,
an election, or an attempted election, was held in Clay
City ( a city of the fifth class), Powell county, Ky., at
which the appellants claim they were elected mayor,
police judge, and councilmen.   The election was held

under the supervision of officers appointed by the mayor of the city, and at a place other than that where the general election for county officers was held. When the polls were closed at the city election, the officers counted the ballots and made out and signed certificates of the result. One of the certificates were placed in the back of the stub, or poll book, and one in the ballot box. When the officers tore from the stub book the unused ballots, they, by mistake, tore out the certificate of the result, and destroyed it with the unused blank ballots. These certificates left in the hands of the election officers were lost or destroyed, which left the certificate placed in the ballot box the only one showing the result of the count of the ballots. When the county board of election commissioners met to perform their duties, they were unable to ascertain the result of the city election, and consequently did not issue certificates of election to any city officer. The appellants instituted this action to require the judges of the city election to produce the keys to the ballot box, and open it, and have the board of election commissioners re-assemble, and from the certificate in the box, issue certificates of election. They alleged in their petition that they had received the highest number of votes, and were elected. The lower court refused to grant appellants' request, and they have appealed.

The only question for determination is whether the election for city officers was valid. If so, appellants should not be deprived of the offices because of mere irregularities. See Trustees of Common School v. B. E. Garvey, 80 Ky. 159; 2 Ky. L. R. 383; City of Cynthiana v. Board of Education, 52 S. W. 969, 21 Ky. Law Rep. 733; and Anderson vz. Likens, 104 Ky. 699, 20 Ky. L. R. 1001, 47 S. W. 867. Many other cases might be cited to the same effect, but in all these cases there was an election authorized by law, and the effort was made to have them declared illegal be-

cause of mere irregularities. Subsection 2 of section 1596-a Ky. St. 1903, as amended by an act approved March, 1904, (see Acts 1904, p. 197, c. 93), and subsection 4, provide the only method for the appointment and selection of officers to hold elections. Subsection 3 explicitly prescribes their qualifications, and the manner of their appointment. Subsection 5 provides that the county board of election commissioners shall constitute a board for examining and canvassing the returns of elections, and the manner in which it shall be done. This section requires the board to give certificates of the number of votes cast in the city or town, and to deliver a copy thereof to the municipality. Section 3658, which applies to towns of the fifth class, provides: "In all municipal elections the qualification of voters * * * shall be the same as in State elections; and all elections * * * shall be held under and as provided in the general election * * * laws of the state." We find that, "under and as provided by the general election laws of the state," the county board of election commissioners appoints persons with certain defined qualifications to serve as election officers in each county for the period of one year. In the event they fail to attend, the voters present, under certain restrictions prescribed in subsection 4 of section 1596a, may select the officers to serve for that election. It is certain that it was the intention of the Legislature, in enacting sections 3618, 3658, 3659, 1445, and 1453, and the sections above referred to, to have the elections for cities, towns, and districts held under the general election laws, by the same officers, and at the same time and place of holding the general election for state and county officers. These provisions were enacted to have a uniform system of election, to save as much expense as possible, and to prevent frauds.

In the case of Cope v. Cardwell, Jr., 93 S. W. 3, 29

Ky. Law Rep. 263, the opinion in which construes sections 3669 and 3670, Ky. St. 1903, which relate to cities of the sixth class, and are identical with sections 3658 and 3659, governing cities of the fifth class, the appellant and appellee were opposing candidates for the office of police judge of the town of Jackson. At that election (November 7, 1905) a county ticket was elected, and also a State senator and representative. The clerk placed the names of all candidates upon one ballot; in other words, a separate ballot was not provided for the candidates for county, and those for municipal, offices. Because of the failure of the clerk to provide separate ballots, the appellant sought to have the court declare the election invalid. Upon the trial it appeared that the town of Jackson composed one voting precinct, in which persons living outside of the corporate limits were not permitted to vote. In the opinion rendered in the case, this court, in construing section 3670, said: "Our conclusion is that the inference to be drawn from section 3670 is that, in a case like this, when the precincts contain the same electors as the municipality, one official ballot was all that was necessary." The court then referred to the question as to how the ballots should be printed in towns where the voting precincts include both residents of the town and country, but did not expressly pass upon it. In view of the importance of this question, we have decided to pass upon it. As indicated in the Cope-Cardwell Case, supra, the statute does not make it mandatory upon the clerk to place the names of candidates for county and municipal offices upon the same ballot, but he may do it when the territory composing the voting precinct and the municipality are identical. It is obvious that, where the precinct includes the residents of a town and others residing without the corporate limits, it would be impossible to have a fair election, if the names of all candidates for county and municipal offices were placed upon the

same ballot.  Under the Constitution, elections by
ballot are secret, and, if all the names were placed
upon the same ballot, persons residing without the
town might elect the municipal officers.

Our conclusion is that, under the existing statutes,
if a voting precinct only includes the territory of a
municipality, the ballot may contain the names of candi-
didates for county and municipal offices; but if the
voting precinct includes persons outside of the munic-
ipal territory, then there must be separate ballots.
We are also of opinion that the election under which
appellants claim title to the offices was invalid.  The
officers who were appointed by the board of election
commissioners, and who actually held the election for
county offices and members of the General Assembly,
were the only persons authorized to hold the election
for municipal offices.  We cannot uphold the action
of the parties who held the election at which appel-
lants were voted for, upon the ground that they were
de facto officers.  There can be no de facto officers
when the de jure officers are in charge and discharg-
ing the duties incumbent upon them.

For these reasons the judgment of the lower court
is affirmed.